IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RECAST ENERGY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | 1:25-cv-216 (PTG/WEF) |
| | ) | |
| U.S. TRADE AND DEVELOPMENT AGENCY, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MEMORANDUM ORDER

This matter comes before the Court on the Motion to Dismiss for Lack of Jurisdiction filed by Defendant U.S. Trade and Development Agency ("USTDA"). Dkt. 20. On February 5, 2025, Plaintiff Recast Energy, LLC ("Recast") brought this suit against USTDA to challenge the agency's demand for $400,619 in reimbursements in connection with a grant Recast received. Dkt. 1. The Complaint raises claims pursuant to the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment. *Id.* Defendant now seeks to dismiss the suit for lack of jurisdiction, on the grounds that the Tucker Act governs Plaintiff's claims, thereby divesting this Court of jurisdiction. Dkt. 21. In the alternative, Defendant contends that even if the Tucker Act does not apply, the Court lacks jurisdiction under the APA because the challenged agency action is not a final agency action. *Id.* For the reasons set forth below, the Court finds that it has jurisdiction under the APA and denies Defendant's Motion to Dismiss (Dkt. 20).

1

## FACTUAL BACKGROUND[1]

In July 2018, Defendant and Société des Energies Nouvelles ("SODEN") entered into a agreement ("Grant Agreement") to issue a $996,238 grant for developing a feasibility study on biomass-to-energy operations. Dkt. 1 ("Compl.") ¶ 9. With Defendant's approval, SODEN contracted Recast, a renewable energy limited liability corporation focused on biomass-to-energy operations, to conduct the feasibility study. *Id.* ¶¶ 5, 10. SODEN and Recast entered into a separate agreement ("Study Agreement"), which incorporated by reference a set of USTDA's mandatory contract clauses.[2] *Id.*; Dkt. 3 § 6. In June 2020, Plaintiff submitted its final feasibility report. Compl. ¶ 11. Subsequently, at Defendant's request, Plaintiff submitted invoices identifying all of the subcontractors it retained as part of the study. *Id.* ¶¶ 12-13. Pursuant to the invoices, Defendant issued grant funds to Plaintiff, which Plaintiff then disbursed to its subcontractors. *Id.*

In August 2022, Defendant requested a routine audit of Plaintiff. *Id.* ¶ 14. In March 2023, Defendant issued its final audit report. *Id.* ¶¶ 14-15, 17. The audit report "certified that work was performed satisfactorily." *Id.* ¶ 16. However, the report listed some exceptions and questioned costs from Plaintiff in violation of USTDA's mandatory clauses—including for adding personnel without approval from SODEN or Defendant; failing to enter into contracts with thirteen subcontractors; failing to provide proof of citizenship and work permits for several subcontractors;

---

[1] "Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 433 (4th Cir. 2022) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

[2] The mandatory clauses govern Recast's procedures and policies with respect to subcontractors. *See* Dkt. 3, Annex II. The Study Agreement further provides that "[a]ll subcontracts entered into by [Plaintiff] funded or partially funded with USTDA [g]rant funds" incorporate USTDA's contract clauses. *Id.* § 6.

2

and lacking supporting documentation for several direct cost items. *Id.* ¶ 17. In total, USTDA estimated $701,164 in questioned costs. *Id.* During the course of performance "USTDA never asked for proof of citizenship, work permits, or documentation for Other Direct Costs, nor did it require Recast to have written agreements with its independent contractors." *Id.* ¶ 18.

In April 2024, Defendant demanded a remittance from Plaintiff of $701,164 as a result of the audit. *Id.* ¶ 19; Dkt. 5. In June 2024, Plaintiff responded, through counsel, that it believed "it was not required to remit the majority of the Grant funds it had received" because "for each of the alleged deficiencies, nothing suggested that USTDA was contending it was harmed . . . ." Compl. ¶¶ 20-22. In August 2024, Defendant reiterated its demand for the remittance and asserted that it would "transfer its claim for this debt to the U.S. Department of Treasury . . . ." *Id.* ¶ 23; Dkt. 7. In October 2024, Plaintiff provided additional documentation addressing the concerns in the audit report. Compl. ¶¶ 24-25. In January 2025, Defendant followed up with a recalculated remittance demand of $400,619, due to Defendant by February 6, 2025. *Id.* ¶ 26. During a call between Plaintiff's counsel and an attorney representing Defendant, Plaintiff learned that there was no opportunity for "third-party review of USTDA's conclusions by a neutral arbiter." *Id.* ¶¶ 27-28.

Plaintiff brought the instant suit on February 5, 2025. Dkt. 1. Because Plaintiff did not pay the remittance by February 6, 2025, on February 7, 2025, Defendant certified the debt to the Department of Treasury for debt collection. Dkt. 21-1 ¶ 3. On April 22, 2025, at the request of USTDA's counsel, Defendant recalled the debt from Treasury. *Id.* ¶¶ 5, 7. No debt is currently certified to Treasury. *Id.* On April 25, 2025, Defendant filed the Motion to Dismiss. Dkt. 20.

3

## LEGAL STANDARD

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Lack of subject matter jurisdiction is raised in a motion under Federal Rule of Civil Procedure 12(b)(1). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1994). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "[A] dismissal for lack of subject matter jurisdiction 'must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.'" *Womack v. Owens*, 736 F. App'x 356, 357 (4th Cir. 2018) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013)).

## DISCUSSION

The crux of this jurisdictional dispute concerns whether Plaintiff's claims are governed by the Tucker Act, so as to divest this Court of jurisdiction over Plaintiff's suit. Defendant contends that the Tucker Act applies because Plaintiff seeks monetary relief on a contractual theory. Dkt. 21 at 1. Plaintiff counters that this is not a claim for monetary damages under the Tucker Act but rather a claim "for release from a purported obligation to the United States" and a challenge to a final agency action under the APA. Dkt. 26 at 1, 8-10. The Court agrees with Plaintiff and finds that it has jurisdiction over the Complaint under the APA.

Under the principle of sovereign immunity, "the United States may not be sued without its consent . . . ." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Both the Tucker Act and APA

4

provide limited waivers of immunity for the United States. 28 U.S.C. § 1491(a)(1); 5 U.S.C. § 702. The Tucker Act waives immunity for claims against the United States that are premised on the Constitution, a statute, a regulation, or an express or implied contract and seek money damages "in cases not sounding in tort." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (quoting 28 U.S.C. § 1491(a)(1)); *see also Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). Where a claim seeks more than $10,000 in damages against the United States, the Act conveys exclusive jurisdiction to the Court of Federal Claims. 28 U.S.C. § 1491(a)(1); *see also* 28 U.S.C. § 1346(a)(2) (granting district courts concurrent jurisdiction over contract claims under $10,000). "[A] primary purpose of the [Tucker] Act [is] to ensure that a central judicial body adjudicates most claims against the United States Treasury." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) (citing *United States v. Hohri*, 482 U.S. 64, 71-73 (1987)). Accordingly, district courts are "cautious about trespassing into the province of the Court of Federal Claims." *Randall*, 95 F.3d at 346. However, the Tucker Act does not apply "when the [APA] . . . provides an avenue for relief." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324 (2020); *see* 5 U.S.C. § 702 (providing that "[t]he United States may be named as a defendant in [an APA action]").

### *Tucker Act*

As a preliminary matter, the Court finds that the Tucker Act does not divest this Court of jurisdiction over Plaintiff's claims. At its core, the Complaint does not seek money damages from the USTDA. Instead, it seeks forward-facing, declaratory relief to be released from the need to reimburse the agency of its grant disbursements. *See* Compl. at 9; *see also Randall*, 95 F.3d at 347 (stating that courts must examine "the essence of [the] complaint" rather than the "form of a plaintiff's pleading" in determining whether the Tucker Act applies). Courts interpreting the Tucker Act have repeatedly held that a claim does not arise under the Act where "Plaintiff is

seeking to be released from an obligation to pay money to the United States," as opposed to "seeking any money from the United States." *Roetenberg v. Sec'y of the Air Force*, 73 F. Supp. 2d 631, 635 (E.D. Va. 1999); *Flander v. United States*, 737 F. App'x 530, 532 (Fed. Cir. 2018) ("Debt cancellation does not constitute monetary damages under the Tucker Act, and thus lies outside the jurisdiction of the Court of Federal Claims."); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 945 (Fed. Cir. 2007) ("[T]here is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place. Simply stated, if the plaintiff in the second scenario prevails, he would not 'be receiving monetary damages from the public fisc of the United States.'") (quoting *Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998).

On Defendant's theory, the relevant sources of law for this suit are contractual, and "a contract is afforded a well-established presumption that monetary damages are available." Dkt. 21 at 10-11 (quoting *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 452 (2019)). The Court disagrees. Plaintiff's claims do not assert any purported failure to comply with contractual terms under the grant agreements and Plaintiff does not seek money from the United States. *See Elev8 Balt., Inc. v. Corp. for Nat'l and Cmty. Serv.*, 804 F. Supp. 3d 524, 547 (D. Md. 2025). Instead, Plaintiff's claims arise under the APA and the Fifth Amendment's Due Process Clause, neither of which obligate the federal government to pay money damages. *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (with respect to the APA); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (with respect to the Fifth Amendment). Nor does the fact that Plaintiff's claims relate to its financial benefits under the Grant Agreement render them contractual actions. *Roetenberg*, 73 F. Supp. 2d at 635-36 ("To be sure, [that] a financial benefit

6

to plaintiff and a financial detriment to the government would flow from a decision . . . does not mean that plaintiff's complaint is a claim for money damages against the government."). Plaintiff's claim seeks to be released from its obligation to pay money to the United States; and, if it prevails, no monies will be due from the United States. Accordingly, the Tucker Act does not apply.

### *Final Agency Action under the APA*

Defendant argues that even if the APA governs, the Court lacks subject matter jurisdiction because Plaintiff does not challenge a final agency action. Under the APA, the Court may only exercise jurisdiction over challenges to a "final agency action." 5 U.S.C. § 704; *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) ("[F]inality under the APA is a jurisdictional requirement."). An agency action is final where it (1) "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

The relevant agency action here is USTDA's determination that Plaintiff must reimburse part of its grant payment. Compl. ¶ 2. Defendant does not contest that the USTDA's determination was the "consummation of the agency's decisionmaking process." Dkt. 21 at 14. Instead, Defendant avers that the action lacks legal consequences because despite its final determination on the pending debt, "USTDA, on its own, cannot compel Plaintiff to pay the debt" and must certify the debt to the Treasury Department. *Id.* at 15. Accordingly, per Defendant, "no rights or obligations of Plaintiff have been determined" until it certifies the debt to Treasury. *Id.*

The Court, however, concurs with Plaintiff that the agency's "decision to decertify the alleged debt—which occurred during the pendency of this lawsuit and a mere three (3) days before the Motion was filed—should not be deemed to defeat finality." Dkt. 26 at 9. As a practical

7

matter, the USTDA's conclusions in the audit report alone impose a financial obligation onto Plaintiff from which legal consequences flow. *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 599-600 (2016) (stating that courts have "long taken" a "pragmatic approach" to finality). Further, the finality of an agency action is determined at the time the action was filed. *See Genesis Healthcare, Inc. v. Becerra*, 39 F.4th 253, 262-63 (4th Cir. 2022). At the time the Complaint was filed, Defendant had certified the debt to Treasury. Accordingly, "[t]he consequences of the agency's subsequent withdrawal of its . . . final agency action[] during the course of litigation . . . are governed by the principles of mootness, not by whether sovereign immunity was waived or a final agency action was challenged." *Id.* at 263.

Nor is the matter now moot, where "the allegedly wrongful behavior [the certification of the debt] could . . . reasonably be expected to recur." *Id.* at 261 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000)). Defendant's voluntary decision to decertify the debt says nothing about the ongoing dispute for declaratory relief on the USTDA's conclusions in the audit report. *See id.* (finding that agency's decision to void audit findings did not render moot the plaintiff's claims seeking a declaratory judgment that it did not commit the reported violations). Therefore, the Court finds that it has subject matter jurisdiction under the APA.

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction (Dkt. 20) is **DENIED**.

Entered this 26 day of March, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge